# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWENDA J. JERNIGEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-437-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Gwenda J. Jernigen requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on February 9, 1958, and was forty-nine years old at the time of the administrative hearing. She has a high school education and previously worked as a corrections officer, gambling cashier, nurse's aide, cashier II, and retail store manager. She alleges she has been unable to work since April 1, 2006, because of generalized osteoarthritis, anxiety and depression.

## Procedural History

On April 11, 2006, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, which was denied. ALJ Deborah L. Rose conducted a hearing and determined that the claimant was not disabled on May 25, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined the claimant retained the physical residual functional capacity ("RFC") to perform medium work, *i. e.*, that she could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand and/or walk for up to six hours in an eight-hour workday; frequently climb, balance, stoop, kneel, crouch, crawl, and reach; and frequently push/pull foot and/or hand controls. The claimant was further limited to "work requiring occasional contact with

the general public, and c[ould] perform tasks requiring one or two-step instructions which c[ould] be learned in less than 30 days." (Tr. 16). The ALJ concluded that although the claimant could not return to her past work, she was nevertheless not disabled because she could perform work in significant numbers in the regional and national economies, *e. g.*, industrial cleaner and poultry hanger (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze her credibility; (ii) by failing to find her mental impairment met Listing 12.04; and, (iii) by failing to propose a proper hypothetical question to the vocational expert. As part of her second contention, the claimant argues the ALJ failed to discuss probative medical evidence regarding her mental impairments. The Court finds this argument persuasive.

The record reveals that the claimant began receiving mental health treatment at the Behavioral Health Clinic affiliated with the Choctaw Nation Health Care Center beginning in September 2004 and continuing through April 2007. She was initially assessed with anxiety disorder (NOS) and prescribed Prozac and Seroquel in September 2004 (Tr. 65). By October 2004, her dosage of Seroquel was increased (Tr. 63). The claimant was told to taper off her dosage of Seroquel and was prescribed Elavil in December 2004 (Tr. 60). She was diagnosed with post-traumatic stress disorder ("PTSD") and dysthymic disorder and prescribed Geodon in May 2006 (Tr. 59, 298). By July 2006, she was suffering from psychotic disorder due to severe depression with delusions (Tr. 58, 112). The claimant began seeing clinic psychiatrist Dr. Charles van Tuyl, M.D., in August 2006. She indicated the

-4-

Prozac she had been taking for two years had stopped working. Dr. van Tuyl assessed her with PTSD, major depression (recurrent, severe and without psychotic features), generalized anxiety disorder and a Global Assessment of Functioning ("GAF") score of 55 (Tr. 354). On two occasions in September 2006 and again in November 2006, the claimant complained of depression, problems sleeping, financial stress, lack of energy, visual hallucinations of her deceased mother, and auditory hallucinations. She was assessed with PTSD, major depression with psychotic features, generalized anxiety disorder, and a GAF score of 50 (Tr. 351-53). By March 2007, the claimant continued to suffer from auditory and visual hallucinations and was depressed and anxious. She continued on her medication and was assessed with a GAF of 55 (Tr. 349). In April 2007, the claimant continued to suffer from the same problems and had difficulty sleeping. She was taking Valium, Prozac, Wellbutrin, Geodon and Elavil. Dr. van Tuyl continued to assess her with major depression with psychotic features, general anxiety disorder, and a GAF of 55 (Tr. 346, 348).

Records reveal that the claimant also received mental health treatment at the McAlester Health Clinic and the Latimer County Health Clinic. The claimant was seen in McAlester beginning in July 2004 until April 2006. She complained of anxiety and depression and was prescribed Elavil, Valium, and Prozac (Tr. 243-60, 262-63, 265-80). She was seen at the Latimer County Health Clinic from July 2005 through June 2006. She was assessed with anxiety and depression and prescribed Valium (Tr. 236-41, 305-12).

The claimant underwent a mental status examination with Dr. Kathleen A. Ward, Ph.D., in May 2006. She primarily complained of problems focusing and remembering. The

claimant did not get along with her family, was sleeping poorly, and felt her family would be better off without her. Examination revealed she was "somewhat disheveled." Dr. Ward noted the claimant "had an affected quality, as if she were exaggerating her symptoms to ensure they were noted." Her thought processes were "logical and organized" and she had "no bizarre thought content." The claimant exhibited "no evidence of delusional thought" but she described her mood as a two on a scale of ten. Dr. Ward estimated the claimant's intellectual abilities were "within the lower average range." She had some deficits in social judgment. Dr. Ward assessed the claimant with mood disorder (NOS), anxiety disorder (NOS) and personality disorder (NOS, provisional). She viewed the claimant as "a somewhat unreliable historian" and believed her exaggeration of issues could be for "secondary gain" or "a cry for help." The claimant had been non-compliant with mental health treatment, and although she appeared depressed and anxious, Dr. Ward concluded "the degree to which these issues [were] present [was] difficult to discern[.]" (Tr. 300-03).

In June 2006, non-examining agency psychologist Julia Doolin, Ph.D., reviewed the claimant's medical records and completed a Psychiatric Review Technique form assessing the claimant for affective disorders and anxiety-related disorders. She concluded the claimant had mild functional limitations in performing daily activities, moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration (Tr. 322-35). She also completed a mental RFC assessment and determined the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and

concentration for extended periods, and interact appropriately with the general public (Tr. 318-21). Dr. Doolin's findings were affirmed by non-examining agency psychologist Burnard Pearce, Ph.D., in July 2006 (Tr. 345).

The ALJ determined the claimant's anxiety and depression were severe impairments (Tr. 15). She discussed the mental evaluation by consulting psychologist Dr. Ward (Tr. 18-19), the assessments by the non-examining agency psychologists (Tr. 20), and some of the claimant's treatment records from the Choctaw Nation Behavioral Health Center (Tr. 19). The ALJ, however, failed to mention the GAF scores of 50 and 55 assigned by the claimant's treating psychiatrist Dr. van Tuyl.[2] "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947.[3] The ALJ

---

[2] The ALJ appears to have favored the results of the claimant's examination by Dr. Ward and the opinions of non-examining psychologists over that of her treating psychiatrist Dr. van Tuyl. *See, e. g., Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("A treating physician's opinion generally is favored over that of a consulting physician."), *citing Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (noting that "treating physician's report should be favored over that of consulting physician who merely reviews the records"), *citing Whitney v. Schweiker*, 695 F.2d 784, 769 (7th Cir. 1982). This was all the more troublesome because Dr. Van Tuyl would have had the most current opinion as to the claimant's condition, as he treated her after Dr. Ward examined her and after the non-examining psychologists reviewed her medical records. At a minimum, the ALJ should have explained why he preferred the opinions of non-treating physicians over that of her treating physician Dr. van Tuyl.

[3] "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." *Lee*, 117 Fed. Appx. at 678 [quotation omitted]. "A GAF score of 51-60 indicates moderate symptoms, such as flat

should have considered such low GAF scores and whether they were due to occupational factors. *See*, *e. g.*, *Givens v. Astrue,* 251 Fed. Appx. 561, 567 n.4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion].

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to rely only upon the evidence that supported a finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Because the ALJ failed to discuss probative evidence, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position

---

affect, or moderate difficulty in social or occupational functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) [quotation omitted].

to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairments.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 31st day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**